**Toby G. GETTLER, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 75783.**

Missouri Court of Appeals,
Western District.

Oct. 15, 2013.

James Layton, Jefferson City, MO, for Appellant.

Toby Gettler, St. Charles, MO, pro se.

Before Division Four: JAMES EDWARD WELSH, C.J., ALOK AHUJA, J., and JAMES P. WILLIAMS, Sp. J.

JAMES EDWARD WELSH, Chief Judge.

The Director of Revenue appeals the Administrative Hearing Commission's (AHC) determination that Toby G. Gettler's personalized license plate bearing the configuration "MZU SUX" is not subject to recall by the Director under section 301.144.3, RSMo Cum.Supp.2012, or 12 CSR 10–23.185. The Director contends the AHC erred in rejecting the Director's decision to recall the license plate because section 301.144.3 and 12 CSR 10–23.185 authorize the Director to recall personalized license plates that are obscene and the use of the word "sux" has an undisputed sexual meaning and is obscene and offensive. We affirm the AHC's determination.

Gettler, a self-proclaimed University of Kansas Fan, is a Missouri motor vehicle owner who applied for and received a Missouri personalized license plate from the Director bearing the configuration "MZU SUX," which he asserts stands for the message "Mizzou sucks." According to Gettler, he chose the configuration "MZU SUX" to support the University of Kansas in its rivalry with the University of Missouri and to proclaim his belief that the University of Missouri's athletic program is inadequate and inferior to the University of Kansas's athletic program. In May 2010, the Director received a complaint from a citizen complaining about Gettler's license plate. On July 19, 2010, the Director issued a notice to Gettler stating that the license plate was being recalled and should be surrendered to the Department of Revenue for destruction. The Director determined that Gettler's license plate violated section 301.144.3 and 12 CSR 10–23.185 because it was obscene or profane.

Upon receiving the notice of recall, Gettler timely filed a petition with the AHC appealing the final decision of the Director to recall the license plate. In answer to the petition, the Director alleged that the "license plate configuration of 'SUX' is symbolic of the words 'suck' or 'sucks' and this word configuration is obscene, profane, offensive to good taste, or decency[.]"

At the hearing before the AHC, the Director presented evidence that it had issued recall notices to two other Missouri motor vehicle owners possessing similar personalized license plates, including the configurations "2WD SUX" and "WTR SUX." Gettler admitted at the hearing that the word "sucks" "can be used in a way that references a sexual act," but he submitted several examples where the word is used without a sexual connotation, including these book titles: "Math Doesn't Suck—How to Survive Middle School Math" by Danica McKellar; "English Doesn't Suck: It Rocks" by Alice Court-

ney, Bobbi Creighton, and Sue Skidmore; and "Your Movie Sucks" by Roger Ebert. Gettler also submitted a written advertisement for Nicorette gum which suggested that the gum "Makes Quitting Suck Less." Further, Gettler submitted the slang definition of "suck" as provided by the Merriam Webster's Online Dictionary, which defines "suck" as "to be objectionable or inadequate."

On October 1, 2012, the AHC issued its determination that Gettler's personalized license plate was not obscene or offensive and, therefore, was not subject to recall by the Director. In so ruling, the AHC in its findings of fact found that the common usage of the word "sucks" is "subpar or inadequate." The AHC found that the slang definition of "suck" as provided by the Merriam Webster's Online Dictionary "has become a common usage of the word in recent years." The AHC concluded that, although the word "sucks" may have "a sexual origin," Gettler's personalized license plate "does not describe a sexual act, make a lewd reference to sexual organs, or appeal to prurient interests." The Director appeals.

The AHC's decision in this matter is subject to this court's review pursuant to section 621.189, RSMo Cum.Supp.2012.[1] Section 621.193, RSMo 2000, provides our standard of review and states:

In cases reviewable under the provisions of section 621.189, the decision of the administrative hearing commission shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record, if a mandatory procedural safeguard is not violated and if the approval or disapproval of the exercise of authority in question by the administrative hearing commission does not create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency.

The Director contends that the AHC erred in rejecting the Director's decision to recall the license plate because section 301.144.3 and 12 CSR 10–23–1.85 authorize the Director to recall personalized license plates that are obscene and the use of the word "sux" has an undisputed sexual meaning and is obscene and offensive.[2] We disagree.

1. Section 621.189 says: "Final decisions of the administrative hearing commission in cases arising pursuant to the provisions of section 621.050 shall be subject to review pursuant to a petition for review to be filed in the court of appeals in the district in which the hearing, or any part thereof, is held or, where constitutionally required or ordered by transfer, to the supreme court, and by delivery of copies of the petition to each party of record, within thirty days after the mailing or delivery of the final decision and notice thereof in such a case. In *State ex rel. Mo. Dir. of Revenue v. Deutsch*, 751 S.W.2d 132, 135 (Mo. App.1988), this court determined that, pursuant to section 621.050, the AHC is authorized to hear an appeal from a decision of the Director of Revenue recalling a personalized license plate.

2. We note that, in his point relied on, the Director contends that the AHC erred in rejecting the Director's decision to recall Gettler's license plate because section 301.144 and 12 CSR 10–23.185 authorize the recall of license plates that are "obscene, profane, patently offensive or offensive to good taste or decency." The Director's recall decision to Gettler, however, referenced that the license plate was obscene or profane only, and the AHC addressed whether Gettler's license plate was obscene or profane only. Moreover, in the argument portion of his brief, the Director concentrates only on whether or not the word "sucks" is obscene. Thus, we do not address whether the license plate is "profane" or "patently offensive or offensive to good taste or decency." Further, we note that 12 CSR 10–23.185, in determining whether a personalized license plate may be

Section 301.144.1 gives the Director the authority to "establish and issue special personalized license plates containing letters or numbers or combinations of letters and numbers." Section 301.144.3, however, directs that the Director shall not issue a personalized license plate if the license plate contains:

[A]ny letters, numbers or combination of letters and numbers which are obscene, profane, patently offensive or contemptuous of a racial or ethnic group, or offensive to good taste or decency, or would present an unreasonable danger to the health or safety of the applicant, of other users of streets and highways, or of the public in any location where the vehicle with such a plate may be found.

Section 301.144.3 also gives the Director the authority to recall personalized license plates if the Director determines that the plates are:

[O]bscene, profane, patently offensive or contemptuous of a racial or ethnic group, or offensive to good taste or decency, or would present an unreasonable danger to the health or safety of the applicant, of other users of streets and highways, or of the public in any location where the vehicle with such a plate may be found.

Pursuant to the authority given to him by section 301.144.1 to establish rules and regulations regarding the standards and establishing the procedure for issuing personalized plates, the Director adopted Regulation 12 CSR 10–23.185, which states:

(1) Language or symbols which are obscene or profane are not protected by the United States or Missouri Constitution. The language or symbols shall not be allowed on any personalized motor vehicle license plate issued under the provisions of section 301.144, RSMo. In determining whether or not requests for personalized motor vehicle license plates contain language or symbols which are obscene or profane, the Department of Revenue will use the standards in section (2).

(2) The following terms, as used in this rule, shall be defined as follows:

(A) Obscene—Language or symbols which represent or describe ultimate excretory functions or sexual acts in a patently offensive manner or make lewd reference to the male or female sexual organs and appeal to the prurient interests of the average person applying contemporary community standards (see *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607 [37 L.Ed.2d 419] (1973)). Prurient interests, as used in this definition, shall mean shameful or morbid interest in nudity, sex or excretion that goes substantially beyond customary limits or candor in description or representation of these matters (see *Halderman [Haldeman] v. United States*, C.A.Kan., 340 F.2d 59 (10th Cir.1965)); and

(B) Profane—Language or symbols which are irreverent or contemptuous of things regarded as sacred or that imply divine condemnation (see *Baker v. State*, 16 Ariz.App. 463, 494 P.2d, 68 (1972) and *Duncan v. United States*, 48 F.2d 128 (9th Cir.1931)).

(3) No motor vehicle license plate will be issued by the Department of Revenue if the language or symbols on the plate

recalled, appears to limit its standards to language or symbols which are obscene and profane. *The regulation does not address standards for determining whether a personalized* license plate may be recalled because it is "patently offensive or offensive to good taste or decency."

are obscene or profane. In order to make this determination, the Department of Revenue will look to the way the average person applying contemporary community standards would view the license plate. Factors which the Department of Revenue may consider in this regard include, but are not limited to:

(A) An explanation by the registrant as to why s/he chose particular language or symbols to be on his/her personalized motor vehicle license plate;

(B) Complaints from the public regarding a license plate with the same letters, numbers or symbols as that requested or held by the registrant;

(C) Complaints from the public regarding a license plate with similar letters, numbers or symbols as that requested or held by the registrant;

(D) Dictionary definitions of the language or symbols requested by the registrant; and

(E) Information from other states regarding motor vehicle plates which have not been issued by them because they found them to be obscene or profane.
(4) The Department of Revenue shall recall any personalized motor vehicle license plate which it has already issued if it determines that a plate is obscene or profane.

Gettler does not dispute that the Director has broad discretion to recall a personalized license plate if the Director determines that the license plate is obscene. Indeed, section 301.144.3 states, "The director *may* recall any personalized license plates ... if the director determines that the plates are obscene [.]"[3] The Director's regulation, 12 CSR 10–23.185, gives factors that the Department of Revenue may consider in determining whether the language or symbols on the license plate are ob-

scene, but the regulation specifically says that the Department is not limited to those factors in making the determination. 12 CSR 10–23.185(3). Moreover, the regulation instructs that, in making the determination, the Department "will look to the way the average person applying contemporary community standards would view the license plate." 12 CSR 10–23.185(3).

■ The Director asserts that the issue as to whether or not the license plate configuration is obscene is a question of law and is a matter for the independent judgment of this court. The United States Supreme Court, however, has made it clear that determining whether or not something is obscene and appeals to the prurient interest and is patently offensive is a factual issue and that contemporary community standards must be applied by fact finders "in accordance with their own understanding of the tolerance of the average person in their community[.]" *Smith v. U.S.*, 431 U.S. 291, 305, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977); *see also Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The fact finder in this case was the administrative hearing commission.

■ Indeed, in cases involving appeals from the Director of Revenue, section 621.050.1, RSMo 2000, provides that "any person or entity shall have the right to appeal to the administrative hearing commission from any finding, order, decision, assessment or additional assessment made by the director of revenue." The review is instituted by the filing of a petition with the AHC. § 621.050.1. Pursuant to section 621.050.2, "[t]he procedures applicable to the processing of such hearings and determinations shall be those established by chapter 536, RSMo[.]" Thus, under section 621.050, the general assembly gave the

---

3. We added the emphasis.

AHC the power to review the Director's decision. The AHC's function, therefore, " 'is to render the administrative decision of the agency.' " *Dept. of Social Servs. v. Mellas*, 220 S.W.3d 778, 782 (Mo.App.2007) (citation omitted);[4] *see also J.C. Nichols Co. v. Dir. of Revenue*, 796 S.W.2d 16, 20–21 (Mo. banc 1990) ("Because the Commission announces the decision of the agency, the Commission's decision in this case to adjust the Director's [tax deficiency] assessment is within the authority of the Commission. It is within the authority of the Commission because it is within the authority of the agency."). "The commission actually steps into the [Director's] shoes and becomes the [Director] in remaking the [Director's] decision. This includes the exercise of any discretion that the [Director] would exercise." *Mellas*, 220 S.W.3d at 783. Thus, because the AHC steps into the shoes of the Director and exercises the Director's discretion, determining whether Gettler's license plate was obscene was a factual issue for the AHC to decide. " 'We will not substitute our judgment for that of the [AHC] on factual matters[.]' " *Holdredge v. Mo. Dental Bd.*, 261 S.W.3d 690, 692 (Mo.App.2008) (citation omitted).

The first factor that the Department of Revenue may consider in determining whether the license plate configuration is obscene to the average person applying contemporary community standards is the explanation provided by Gettler as to why he chose the particular language or sym-

bols to be on his personalized license plate. 12 CSR 10–23.185(3)(A). As previously noted, the record established that Gettler was a University of Kansas fan and that he chose the configuration "MZU SUX" in support of the University of Kansas in its rivalry with the University of Missouri and his belief that the University of Missouri's athletic program is inadequate and inferior to the University of Kansas's athletic program.

The second factor that the Department of Revenue may consider in making the determination whether the license plate configuration is obscene to the average person applying contemporary community standards is whether the Department had received "[c]omplaints from the public regarding a license plate with the same letters, numbers or symbols as that requested or held by the registrant[.]" 12 CSR 10–23.185(3)(B). At the hearing before the AHC, the Director's attorney represented that the Department of Revenue had received a citizen complaint about Gettler's personalized license plate. The details of the complaint were not offered into evidence. The AHC concluded that "one complaint is not enough to reach a conclusion that the [average person applying] contemporary community standards saw the license plate as obscene or profane."

The third factor that the Department of Revenue may consider in making the determination whether the license plate configuration is obscene to the average person

**4.** *Mellas* involved a claimant seeking review of a decision of the department of social services pursuant to section 621.055, RSMo. Section 621.055.1, RSMo Cum.Supp.2012, provides that "[a]ny person authorized pursuant to section 208.153 to provide services for which benefit payments are authorized pursuant to section 208.152 may seek review by the administrative hearing commission of any of the actions of the department of social services specified in subsection 2, 3, 4 or 5 of

section 208.156. The review may be instituted by the filing of a petition with the administrative hearing commission. The procedures applicable to the processing of such review shall be those established by chapter 536." Section 621.055, therefore, is functionally identical to section 621.050, and thus the reasoning used by the court in *Mellas* is applicable to this case involving AHC's review of the decision of the Director of Revenue.

applying contemporary community standards is whether the Department had received "[c]omplaints from the public regarding a license plate with similar letters, numbers, or symbols as that requested or held by the registrant[.]" 12 CSR 10–23.185(3)(C). Although the Director provided evidence that he had recalled other personalized license plates with the wording "SUX," no evidence was submitted regarding public complaints about those license plates.

The fourth factor that the Department of Revenue may consider in determining whether the license plate configuration is obscene to the average person applying contemporary community standards is the "[d]ictionary definitions of the language or symbols requested by the registrant[.]" 12 CSR 10–23.185(3)(D). At the hearing before the AHC, Gettler submitted the definition of "suck" as found at *www. merriam-webster.com*, which said: "slang: to be objectionable or inadequate[.]" The AHC found this to be "the most apt definition for [Gettler's] use of the word." The AHC also noted that other dictionary definitions that appear for "suck" include: "To draw (a liquid) into the mouth by a partial vacuum caused by motion of the mouth; to draw (milk) from a breast or udder by motion of the mouth." Webster's Third New International Dictionary 2283 (unabr. 1986). The AHC found that the slang usage "has become a common usage of the word in recent years."

The final factor the regulation suggests that the Department may consider is "[i]nformation from other states regarding motor vehicle plates which have not been issued by them because they found them to be obscene or profane." 12 CSR 10–23.185(E). In the brief on appeal, the Director relies on several cases in support of his contention that Gettler's license plate configuration is obscene.[5]

In *Hunt v. PennDOT*, 47 P.a. D. & C.3d 132 (Pa.Com.Pl.1987), the petitioner applied for and was issued a license plate which read "55–SUKZ."[6] After a citizen complaint, the Pennsylvania Department of Transportation recalled the plate on the grounds that the plate was "offensive to good taste and decency" in violation of the Department's regulation. *Id.* at 133. The *Hunt* court agreed and stated:

> The inscription of one's motor vehicle registration plate is not an ordinary mode for one's self expression. There is at least a connotation that any message appearing on a license plate is condoned by the state. It is not unreasonable for the department to conclude that the combination of numbers and letters chosen by the petitioner in this case are "offensive to good taste."

*Id.* at 137.

In *Kahn v. Department of Motor Vehicles*, 16 Cal.App.4th 159, 162, 20 Cal. Rptr.2d 6 (1993), the Department of Motor Vehicle recalled the appellant's personalized license plates reading "TP U BG." The appellant was a certified court reporter, and the letters on her personalized plate had two meanings: "If You Can" and "fuck." *Id.* at 163, 20 Cal.Rptr.2d 6. After receiving a citizen complaint about the

---

**5.** We note that the AHC did not include this factor in its quotation of the regulation and only addressed the Director's reliance on *Broussard v. School Board of City of Norfolk,* 801 F.Supp. 1526 (E.D.Va.1992) in its decision. For a discussion of that case, *see infra* note 6. Beyond *Broussard,* we are uncertain whether any other information from other states regarding motor vehicle plates was considered by the Director or the AHC. Regardless, we set forth the cases that the Director argued in his brief on appeal.

**6.** The petitioner was a vocal opponent of the 55 mile-per-hour speed limit.

license plate, the Department recalled the license plate on the grounds that the plate was "offensive to good taste and decency" in violation of the state's Vehicle Code. *Id.* at 162–65, 20 Cal.Rptr.2d 6. The *Kahn* court determined that the evidence supported the Department's determination that the license plate configuration was offensive. *Id.* at 169–70, 20 Cal.Rptr.2d 6. In so ruling, the *Kahn* court said:

> While this particular epithet may have lost some of its shock value in recent years and acquired varied meanings which render it offensive to a smaller segment of the population than formerly was the case, it nonetheless is commonly understood by a substantial segment of the population to be a demeaning, degrading and therefore offensive term for sexual intercourse. There was no need for evidence on this commonly known point, but defendant nonetheless presented evidence from an expert in public opinion that people may be deeply offended by the word.

*Id.* at 169, 20 Cal.Rptr.2d 6.

In *Katz v. Department of Motor Vehicles,* 32 Cal.App.3d 679, 682, 108 Cal.Rptr. 424 (Cal.Ct.App.1973), the Department of Motor Vehicles refused to issue appellant a personalized license bearing the letters "EZ LAY." The *Katz* court upheld the Department's refusal on the grounds that the license plate was offensive to good taste and decency and determined that the state's statute did not abridge the appellant's right of freedom of expression. *Id.* at 684–87, 108 Cal.Rptr. 424.

Finally, in *McMahon v. Iowa Department of Transportation, Motor Vehicle Division,* 522 N.W.2d 51, 53 (Iowa 1994), the Department of Transportation revoked appellee's personalized license plates reading "3MTA3", which when viewed in a mirror read "EATME." After receiving two complaints about the license plate, the Department revoked the license plate on the grounds that the plate had a sexual connotation and was offensive in violation of state law. *Id.* Iowa state law prohibited personalized license plates if the combination of letters was "sexual in connotation," "defined in dictionaries as a term of vulgarity," and "considered to be offensive." *Id.* at 55. The *McMahon* court determined that the Department's procedure for approving and revoking personalized license plates was reasonable and that the license plate approval process did not violate equal protection. *Id.* at 55–57.

None of the cases relied on by the Director, however, involved a determination that the license plates in issue were obscene to the average person applying contemporary community standards.[7] While

---

7. The Director also relied on *Broussard by Lord v. School Board of the City of Norfolk,* 801 F.Supp. 1526 (E.D.Va.1992), but that case did not involve motor vehicle license plates. In that case, a middle school student brought an action pursuant to 42 U.S.C. § 1983 against the school board and school administrators challenging her suspension from school for refusing to change out of a shirt that said "Drugs Suck!" *Id.* at 1527. The court held that the student's suspension did not violate her due process rights and that the school could prohibit the wearing of the shirt without violating the student's First Amendment rights. *Id.* The court found that "a reasonable middle school administrator could find that the word 'suck,' even as used on the shirt, may be interpreted to have a sexual connotation." *Id.* at 1534. In so concluding, the court stated: "Although the anti-drug message itself admittedly makes no sexual statement, the use of the word 'suck' and its likely derivation from a sexual meaning, is objectionable. The Court finds that, regardless of whether the word connotes a sexual meaning, its use is offensive and vulgar to many people, including some students between the ages of eleven and fifteen." *Id.* The Director acknowledges that school cases are governed by case law that does not apply here. *See Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Tinker v.*

these cases may be instructive and more reflective of this court's own view of the issue, these cases do not and cannot trump the factual finding made by the AHC, which binds this court's review.

Competent and substantial evidence supported the AHC's determination that Gettler's license plate was not obscene to the average person applying contemporary community standards. The AHC found that the license plate was not obscene. Although another fact finder may have found otherwise, " '[w]e will not substitute our judgment for that of the [AHC] on factual matters[.]' " *Holdredge*, 261 S.W.3d at 692 (citation omitted). We, therefore, affirm the AHC's determination that Gettler's license plate was not subject to recall under section 301.144.3 and 12 CSR 10–23.185.[8]

All concur.

*Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988).

**8.** Because we affirm the AHC's decision that the license plate is not obscene and not subject to recall, we need not address the Director's contention that the recall of license plates that are obscene does not violate the United States Constitution or Missouri's Constitution.